1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 DANIEL YU,                                    Case No.  3:20-cv-06970-JD

8                    Plaintiff,
                                               **ORDER RE PETITION FOR HABEAS**
9        v.                                     **CORPUS**

10 ROSEMARY NDOH, et al.,

11                    Defendants.

12         Petitioner Daniel Yu, a California state prisoner, alleges several claims for habeas relief

13 under 28 U.S.C. § 2254.  Dkt No. 16.  The Court directed respondent to show cause why the writ

14 should not be granted.  Dkt. No. 18.  Respondent filed an answer to the habeas petition, Dkt. No.

15 25, and Yu filed a traverse, Dkt. No. 51.  The petition is denied.

16                                    **BACKGROUND**

17         The California Court of Appeal provided a detail account of the material facts and trial

18 proceedings.  *See People v. Yu*, No. H044305, 2019 WL 1577745, at *1 (Cal. Ct. App. Apr. 12,

19 2019).  As stated in pertinent part:

20             Jane Doe is the oldest of four children born to Chinese immigrants.
              Her best friend was defendant's daughter, A., who had emigrated
21             with her parents from China.  The families were close.  Doe's
              mother was part owner of a holistic health clinic in the Silicon
22             Valley, where Doe's father and A.'s mother worked.

23             In the spring of 2014 Doe was in second grade and A. was in third
              grade.  On weekends they sometimes played together at the clinic
24             and at A.'s house.  They took an art class together, saw each other
              during the summer, and resumed art class in the fall.  Doe's
25             youngest sister was born in 2013 with a congenital disease, and
              had surgery for the condition in January 2014.  That summer Doe's
26             father spent several weeks in China visiting his terminally ill
              mother.  During that time, A.'s parents helped care for Doe, and
27             A.'s father (defendant) helped with transportation.  The Yus
              accepted $200 from Doe's parents as a thank-you, and the families
28             also took a cruise together paid for by Doe's parents as further

*United States District Court*
*Northern District of California*

1

appreciation for the help.

2

3

While on the cruise in February 2015, Doe's mother asked defendant to help arrange the beds in one of the cabins.  Doe's father became upset because his wife and defendant were alone in the room, and he believed defendant had been flirting with his wife.  He confronted defendant but later apologized.  Two months later, Doe's mother traveled with Doe's youngest sister to China for a second surgery.  Between the cruise and the trip to China, Doe's parents argued because Doe's father believed defendant was texting Doe's mother.

4

5

6

7

8

On April 21, 2015, then eight-year-old Doe told her school teacher that she had been touched in her private area by a family friend.  That evening Doe told an emergency response social worker that A.'s father had touched her private areas six times since 2014.  The social worker related the disclosure to Doe's father and contacted the police.  Santa Clara County Sheriff's Deputy Benjamin Hemeon responded, interviewed Doe, and recorded the meeting.  Defendant was arrested later that day and his home was searched.  A.'s mother called Doe's mother in China and told her what had happened.  Doe's father did not discuss the matter with his wife until she returned home, and Doe's mother spoke with Doe about the allegations at that time.

9

10

11

12

13

14

*Id.* at *1.

15

The Court of Appeal summarized Yu's defense:

16

Defendant's wife, daughter, and a niece who lived with the family in 2014 testified that Doe was at their home only a few times in 2014 and she was never alone with defendant. Defendant's wife testified that they moved into the home in January 2014, a holdover tenant lived in the converted garage through the end of May; the Yus did not have a key to the garage, and had access to use the washing machine only when the tenant was home. Defendant's wife worked weekends and did the wash during the week.

17

18

19

20

21

Defendant testified that he never touched Doe inappropriately.  He never brought Doe home from art class in the spring with A., and Doe never played with A. at his house in the spring.  Doe was in defendant's home a few times during the summer, but only twice between September and December 2014 -- once in November before a hike and once in December after art class.  He was never by himself in the converted garage when Doe was at his house in the fall.

22

23

24

25

26

*Id.* at *6.

27

A jury convicted Yu of six counts under Penal Code § 288(a) (Lewd and Lascivious Acts

28

on a Child Under the Age of 14).  *See* Dkt. No. 16 ¶¶ 1-2.  After the verdict, Yu retained a new

United States District Court
Northern District of California

1    attorney to represent him in a motion for a new trial, which the trial court denied. *Id.* at ¶ 3. Yu

2    was subsequently sentenced to 16 years in state prison. *Id.* at ¶ 4.

3         Yu appealed the trial court judgment on November 27, 2017. The Court of Appeal

4    affirmed the judgment on April 12, 2019. The California Supreme Court denied Yu's petition for

5    review. *Id.* at ¶ 10.

6         Yu filed an original federal habeas petition in October 2020. Dkt. No. 1. Respondent

7    moved to dismiss the for failure to exhaust all claims. Dkt. No. 12. The motion was granted with

8    leave to amend because two of the three claims had not been exhausted. Dkt. No. 15. Yu then

9    filed a first amended position containing only his unexhausted claim for relief. Dkt. No. 16.

10        Yu seeks federal habeas relief primarily on the ground that his trial counsel violated the

11   Sixth Amendment right to the effective assistance of counsel. *Id.* Respondent acknowledges, and

12   the record reflects, that Yu's claims are exhausted and that his habeas petition is timely. *See* Dkt.

13   No. 18 at 2.

14                                    **LEGAL STANDARDS**

15        Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a state

16   court decides a claim on the merits, habeas relief can be granted only if the state court decision (1)

17   "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

18   determined by the Supreme Court of the United States," or (2) "was based on an unreasonable

19   determination of the facts in light of the evidence presented in the State court proceeding." 28

20   U.S.C. § 2254(d)(1) and (2); *see also Demacedo v. Koenig*, No. 19-cv-05815-JD, 2022 WL

21   4280643, at *1-2 (N.D. Cal. Sept. 15, 2022); *Garcia v. Lizarraga*, No. 19-cv-02083-JD, 2021 WL

22   242880, at *2 (N.D. Cal. Jan. 25, 2021). The first prong applies both to questions of law and to

23   mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), and the second

24   prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322,

25   340 (2003). *See Chandra v. California*, No. 16-cv-06076-JD, 2022 WL 6144269, at *3 (N.D. Cal.

26   Oct. 7, 2022).

27        A state court decision is "contrary to" Supreme Court authority if "the state court arrives at

28   a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

United States District Court
Northern District of California

court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id*. at 409.

A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  The Court presumes the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *see also Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state court that considered the petitioner's claims, the Court looks to the last reasoned opinion from a lower court.  *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

In this case, the Court looks to the decision by the California Court of Appeal in resolving the habeas petition.  *Yu*, 2019 WL 1577745.  All six claims were rejected on the merits.  *Id.* at *1.  Consequently, the deferential standard of review under 28 U.S.C. § 2254(d) applies to those claims.  *See Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

Ultimately, a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Consequently, a petitioner is not necessarily entitled to relief just because a state

court's decision does not satisfy Section 2254(d).  *See, e.g.*, *Wilson v. Corcoran*, 562 U.S. 1, 5-6 (2010) (explaining that Section 2254(d) "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law"); *Hardy v. Chappell*, 849 F.3d 803, 820 (9th Cir. 2016) (examining petitioner's constitutional claim *de novo* under Section 2254(a) where the petition satisfied the "contrary to" clause of Section 2254(d)(1)).  The Court may deny a habeas petition under § 2254 "by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## DISCUSSION

The Sixth Amendment guarantees effective assistance of counsel to defendants in criminal cases.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a just result.  *See id.*

To prevail on a Sixth Amendment ineffectiveness claim, Yu must first demonstrate that defense counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88; *see also Davidson v. Arnold*, No. 16-cv-03298-JD, 2020 WL 1332096, at *5 (N.D. Cal. Mar. 23, 2020).  Second, he must establish that he was prejudiced by the deficient performance in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  The "likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  The *Strickland* prejudice analysis is complete in itself, and there is no need for harmless error review under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

On habeas review, the Court defers to defense counsel's tactical choices and the state court's determination of whether those choices were reasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (review is "doubly deferential when it is conducted through the lens of federal

habeas"); *see also Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir. 2015); *Davidson*, 2020 WL 1332096, at *8.  The Court looks to whether "it would have been reasonable to reject [Yu's] allegation of deficient performance for any of the reasons expressed by the court of appeal." *Cannedy v. Adams*, 706 F.3d 1148, 1159 (9th Cir. 2013).  "[B]ecause of the difficulties inherent in making the evaluation, [the Court] must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Yu] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Tilcock v. Budge*, 538 F.3d 1138, 1146 (9th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).  At bottom, the Court "may grant relief only if every fairminded jurist would agree that every reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (per curiam) (cleaned up).

Yu raises six grounds for his claim that trial counsel was ineffective.  He says that his attorney: (1) failed to properly cross-examine Doe and Doe's father; (2) failed to investigate or impeach Doe's credibility for being untruthful; (3) failed to investigate and present evidence that Doe's testimony was factually impossible; (4) failed to investigate and present expert testimony; (5) failed to investigate and present evidence of petitioner's good character; and (6) failed to present a good closing argument.  Dkt. No. 16 at 27-40.  Each claim was expressly considered and rejected by the California Court of Appeal in Yu's direct appeal.

For the most part, Yu's petition completely ignores the California Court of Appeal's decision, and essentially asks the Court to review each of his claims *de novo* as if this were a fresh appeal.  This is a wrong approach to a federal habeas petition, all the more so in light of the deferential review standard mandated under Section 2254.  "[F]ederal habeas review cannot serve as a substitute for ordinary error correction through appeal." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (cleaned up).  Because Yu did not meaningfully address the prior state court decision, or follow the standard of review, most of his claims may be properly denied without substantial discussion.  Even so, for the sake of completeness, the Court will take up each claim of ineffective assistance.

**I.      FAILURE TO CROSS-EXAMINE DOE AND DOE'S FATHER**

Yu says that trial counsel was ineffective by failing to adequately cross-examine Doe and Doe's father about alleged inconsistencies in their testimony with respect to (1) when Doe first made her allegations against petitioner, and whom she first told; (2) her awareness of an altercation between Doe's father and Yu; and (3) the details of the incidents. Dkt. No. 16 at 29-30. In Yu's view, counsel did not draw the jury's attention to "integral impeachment evidence" of Doe and Doe's father. *Id.* at 26.

**A.      Background**

The Court of Appeal rejected these contentions.  To start:

> Doe testified extensively about the conversations she and her father had before she disclosed to her teacher. . . . After the cruise her father asked her if anything had happened to her at defendant's house that she did not like, and she told him defendant had touched her 'in the front' and patted her leg but she did not know whether it was an accident. . . .

> Doe was recalled after her father testified and asked whether he had told her to make up the allegations, whether she and her father had talked about telling anyone (including her teacher) what had happened, and whether the molestations really happened.  She was cross-examined twice about whether she and her father had discussed calling the police and talking to her teacher.  The record amply shows Doe explained why she did not make a full disclose to her father, and she was thoroughly cross-examined about their conversations.  She may not have been probed regarding what appeared to be an inconsistent statement to Deputy Hemeon that her father had asked her sometime in 2014 ('when I went home like the first and second time') if defendant had touched her.  But trial counsel may have made the tactical decision to let the apparent inconsistency stand, and to impeach Doe's testimony through other witnesses -- particularly her father. . . .

> The record also shows that Doe's father was examined on why he harbored fears and felt he would be blamed had he notified the police of Doe's allegations.  On direct examination he testified that he had considered calling the police, but felt he would not be believed because he had argued with defendant.  He also offered several reasons for not telling the police about his conversations with Doe:  He 'didn't know it was that serious;' he hadn't reported it right away; he was afraid the officer might think he wanted Doe to tell her teacher; he was afraid defendant would accuse him of framing him because of the argument; and it was a private family matter.

*Yu,* 2019 WL 1577745, at *9-10.

7

The Court of Appeal also summarized the trial court proceedings about Doe's testimony about her awareness of an altercation between her father and the petitioner:

> Doe testified on direct examination that she did not remember her mother or father getting mad at anyone on the cruise, or hearing any kind of argument.  She testified on cross-examination that she did not remember an argument between her father and defendant, her father being upset about something, her father saying her mother did not like him anymore, or asking her mother whether she still loved her father.  But then she also said 'there might have been something like that, but I don't really remember.'  The record shows trial counsel pressed Doe for her recollection about the cruise, and argued to the jury that Doe was lying at the behest of her father.

*Id.* at *10.

In addition, the Court of Appeal discussed the alleged inconsistencies in Doe's testimony about the details of the incidents:

> Doe's testimony was consistent with the disclosure she had given Deputy Hemeon a year earlier.  In both instances she stated that the first two times defendant gave her candy, touched her leg, patted her head, and told her she was pretty; the fourth time defendant removed Doe's pants and underwear, had her lie on her tummy with her legs bent, and touched her buttocks; and the fifth and sixth times, defendant removed her pants and underwear, and touched her vagina while she lay on her back.  In both statements she said she was given a chapter book to read. In both she described turning to see defendant holding something and hearing a clicking sound; and she talked about flapping her arms when he touched her vagina.  She told Deputy Hemeon that during the third encounter defendant removed her underwear, spread her legs and 'just like looked' before flipping her onto her back and touching her back and buttocks.  Her trial testimony regarding the third instance differed in that she described defendant touching her vagina over her underwear while she was standing.  But she also testified to a time she thought happened 'toward the beginning' without underwear when defendant looked at her front private part and also touched her bottom.

*Id.* at *11.

**B.    Discussion**

Yu has not demonstrated that any of this amounted to ineffective assistance.  For the timing of Doe's disclosures, the Court of Appeal noted that "[t]he record amply shows Dow explained why she did not make a full disclose to her father, and she was thoroughly cross-examined about their conversations." *Yu*, 2019 WL 1577745, at *9.  Although Doe "may not have

8

been probed regarding what appeared to be an inconsistent statement to Deputy Hemeon . . . trial counsel may have made the tactical decision to let the apparent inconsistency stand, and to impeach Doe's testimony through other witnesses." *Id.* at \*9.  Yu essentially ignores the state court's analysis and reasoning, and offers no reason to call it into question.

For the cruise incident, state court noted that trial counsel had "pressed Doe for her recollection about the cruise," which elicited testimony that she "did not remember an argument" but that "there might have been something like that, but I don't really remember." *Id.* at \*10.  Yu says that this cross-examination was deficient because counsel did not "properly investigate the case" and lacked "specific evidence that [Doe] knew about the fight."  Dkt. No. 16 at 30.  But Yu did nothing to demonstrate how counsel's investigation might have fallen short, or what useful evidence further investigation might have yielded.  Consequently, it is pure conjecture on Yu's part to believe that something productive had been overlooked by his attorney.  In addition, the record plainly shows that trial counsel explored Doe's recollection of the cruise and suggested that "Doe was lying at the behest of her father," which certainly raised a question of Doe's truthfulness to the jury.

The alleged inconsistencies between Doe's testimony at trial and her statement to the police are minor, and the California Court of Appeal had already examined these inconsistencies, determining that counsel had "no deficient performance" and "may have made the tactical decision not to provide her further opportunity to describe the molests, reconcile inconsistencies, and buttress her credibility." *Yu*, 2019 WL 1577745, at \*11.  Yu, once again, does not address the state court's analysis on this score, or provide a reason to question it.

For the cessation of further cross-examination that Yu complains of, the trial counsel's decision must have been "objectively unreasonable beyond any possibility for fairminded disagreement." *Demirdjian v. Gipson*, 832 F.3d 1060, 1072-73 (9th Cir. 2016).  In addition to showing deference to the state court's assessment, the Court also "give[s] 'great deference' to 'counsel's decisions at trial, such as refraining from cross examining a particular witness.'" *Brown v. Uttecht*, 530 F.3d 1031, 1036 (9th Cir. 2008) (quoting *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000)).  "[S]uggestions regarding how defense counsel might have handled [the

9

witness's] cross-examination differently are insufficient to support an ineffective assistance of counsel claim." *Mancuso v. Olivarez*, 292 F.3d 939, 955 (9th Cir. 2002). Given the fact that trial counsel had already explored all three areas of inconsistencies in cross-examination, there is no reason to believe further inquiry would have borne fruit. Trial counsel's decisions not to engage in cumulative cross examination were well "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

## II.    FAILURE TO INVESTIGATE OR IMPEACH DOE'S CREDIBILITY

Trial counsel chose to not impeach Doe's credibility with instances of alleged lies about doing her homework, pushing her sister, and her nanny's cooking. Dkt. No. 16 at 26. Yu says that counsel rendered ineffective counsel in making this decision.

### A.    Background

The Court of Appeal rejected these contentions:

> Defendant argues that trial counsel was deficient for failing to impeach Doe with specific instances of dishonesty. He contends trial counsel should have called as a witness a receptionist who worked at her parents' clinic, who in a post-trial declaration stated that Doe frequently lied to her mother about doing her homework, and should have elicited from A. (who also supplied a post-trial declaration) that Doe lied about homework, pushing her sister, and her nanny's cooking.

> Not introducing such evidence at trial is not a failure to meet the objective standard of care. As the trial court noted, trial counsel may reasonably have been of the view that it 'might appear petty to impeach a child with lies that might not be uncommon . . . in that age group.' Indeed, defendant acknowledges in his briefing to this court that the conduct described by the receptionist and A. were 'minor instances of dishonesty in which perhaps many children would engage.' Trial counsel may also have been of the view that having Doe's best friend testify that she was a liar would make A. appear biased and not credible.

*Yu,* 2019 WL 1577745, at *11.

### B.    Discussion

Yu does not say why this determination might be wrong in any way wrong. It was perfectly within a reasonable attorney's discretion not to roast a minor-age victim on the stand about such trivial things as homework and cooking. "Trial counsel's strategies, including the treatment of witnesses, are entitled to deference on review." *Lopez v. Allen*, 47 F.4th 1040, 1050

(9th Cir. 2022).  "Because the jury was in a position to weigh the testimony" of Doe, the court

"reasonably conclude[d] that there is not a reasonable probability that the outcome of the

proceedings would have been different" if trial counsel had impeached Doe with specific instances

of dishonesty.  *Lopez*, 47 F.4th at 1051.

### III.   FAILURE TO INVESTIGATE AND PRESENT EVIDENCE OF IMPOSSIBILITY OF DOE'S TESTIMONY

Yu says that trial counsel failed to investigate and present evidence about the layout of the

Yu family's residence that would have shown that Doe's account of events was impossible.  Dkt.

No. 16 at 27.

### A.   Background

The Court of Appeal rejected this argument:

> In support of his new trial motion, defendant submitted post-trial
> declarations from the tenant who occupied the converted garage
> and a college student who lived with the Yu family in the spring of
> 2014.  He argues that trial counsel was deficient for failing to call
> those witnesses to establish that it was 'nearly physically
> impossible' the molests could have occurred at the times and place
> described by Doe.  According to the garage occupant's declaration,
> he was subleasing from the former tenant and the Yus continued
> that sublease through May 2014.  He was the only person with a
> key to the converted garage; the Yus were not allowed in the room
> when he was not there; he was in that room every Saturday and
> Sunday between 2:30 p.m. and 4:30 p.m.; A.'s mother would
> normally do laundry during the week when he was home; and he
> slept on a mattress on the floor.  He testified at the new trial
> hearing that he traveled to China for about 20 days in the March
> 2014, and he left his key with the family during that time.  He
> testified at the new trial hearing that the Yu family did laundry
> several times a week, that most of the time he was home, but
> occasionally he left the door unlocked so they could finish.  He
> testified that he rarely paid the rent with a check and most of the
> time he paid with cash.
>
> In her declaration, the college student identified herself as the
> former tenants' daughter who continued to live with the Yu family
> during her last quarter at a local community college; she slept in
> the living room on a single bed; she moved out in July 2014; and
> the garage tenant was home while defendant's wife did laundry.
>
> 'To sustain a claim of inadequate representation by reason of
> failure to call a witness, there must be a showing from which it can
> be determined whether the testimony of the alleged additional
> defense witness was material, necessary, or admissible, or that

defense counsel did not exercise proper judgment in failing to call
him.'  Defendant has not shown that the testimony was necessary
because trial counsel elicited from other witnesses that he did not
have access to the converted garage while it was occupied by the
tenant.  Defendant argues that the student would have established
that Doe's recollection of the living room with a television and a
couch was inaccurate.  But defendant's wife testified at trial that
the student slept on a twin bed in the living room, and at that time
there was no sofa or television in that room.  Further, the tenant's
testimony that the family had access to the garage while he was
away in March and that he occasionally left the door unlocked for
the family to do laundry would have undercut defendant's position
that he had no access to the room.  The tenant's testimony that he
usually paid rent in cash would have undercut the testimony of
defendant's wife (and checks admitted in evidence) that the rent
was paid by check.  Given the conflicting testimony, trial counsel's
decision not to call the witnesses was rational.

*Yu*, 2019 WL 1577745, at *11-12 (internal citations omitted).

### B.    Discussion

Yu has not shown that trial counsel's tactics fell below an objective standard of
reasonableness under prevailing professional norms.  Trial counsel declared he did investigate the
potential testimony of both tenants and elected not to call either of them.  Dkt. No. 30 at 693.  The
tactical decision of trial counsel "based on an adequate inquiry is immune from attack under
*Strickland*."  *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997).

In addition, the state court's assessment of trial counsel's performance was not objectively
unreasonable.  Yu's wife had also offered the same testimony.  *Yu*, 2019 WL 1577745, at *11-12.
Moreover, the proposed testimony did not necessarily contradict Doe, who may have described the
living room as it appeared after Liu had already moved out of the residence.  Dkt. No. 40 at 587-
88.

Although Yuan's testimony might have shown that Yu lacked access to the room, other
witnesses testified to this fact.  *Yu*, 2019 WL 1577745, at *12.  Not calling Yuan was also
reasonable because the record indicates that he might have testified that Yu had complete access to
the room for 20 days in March 2014 and could access the room alone when doing laundry.  *Id.* at
*11.  In light of these potential conflicts, the state court determined that trial counsel made a
rational decision to avoid potentially harmful testimony.  *Id.* at *12.  Yu again ignored the state
court's analysis entirely, and offers nothing that might lead to a different conclusion.

12

No prejudice to Yu has been shown.  In some cases, the omission of cumulative evidence can be prejudicial where the evidence "would have brought credibility" to key claims of another witness who had motivation to lie.  *Vega v. Ryan*, 757 F.3d 960, 968 (9th Cir. 2014).  Here, however, their ability to bolster Yu and Yu's wife's testimony was limited because of the already-discussed limitations in their testimony.

## IV.   FAILURE TO INVESTIGATE AND PRESENT EXPERT TESTIMONY

Yu challenges trial counsel's decision to not present expert testimony on three topics: (1) a *Stoll* expert to testify that Yu was not a sexual deviant; (2) a computer expert to testify that child pornography or photographs of Doe could have been retrievable, even if they had been deleted; and (3) a child suggestibility expert to testify to the possibility that Doe had been influenced by her father to believe she had been molested.

### A.   Background

The Court of Appeal rejected each of these contentions:

> Defendant argues that trial counsel was ineffective for failing to call an expert psychologist to testify that he was not a sexual deviant. While expert opinion testimony that a defendant shows no signs of sexual deviance is relevant character evidence in a child molestation case, it is not required to meet constitutional standards of competent representation. Consistent with courts of appeal that have found no deficient performance for failure to utilize a *Stoll* expert, the trial court here observed: 'I have myself seen *Stoll* experts testify, and that's risky testimony to present in a child molest case because the jury then is educated about a lot of aspects of child molestation.  For example, jurors learn not all molesters are pedophiles, people who have happy relationships with their wives still commit the crime of molest. A lot of that testimony comes out.  The diagnosis of pedophilia and the criteria set forth in the diagnostic and statistical manual DSM-IV, attorneys can go through cross-examining by going through the various prongs of that diagnosis and so forth. That it seems to me, in many, many cases, very competent attorneys do not call *Stoll* experts . . . . So again, because that testimony can indeed be quite damaging, I can't find, even though I know that it didn't occur to [trial counsel] one way or the other to call a *Stoll* expert, I can't find that he fell below the standard of a competent attorney by failing to call one in this case.

> We agree with the trial court's observations and conclude that trial counsel was not deficient for proceeding without a *Stoll* expert.

United States District Court
Northern District of California

*Yu*, 2019 WL 1577745, at *12 (citations omitted).  The Court of Appeal also considered Yu's argument about trial counsel's decision to not investigate and present expert testimony regarding retrieval of deleted files from Yu's iPhone or computer:

> Defendant argues that trial counsel was ineffective for failing to introduce evidence through a computer expert that any child pornography or photographs of Doe were capable of being retrieved from defendant's iPhone or computer.  A detective testified that his forensic examination of defendant's iPhone 6 Plus and a desktop and laptop seized from his home uncovered no child pornography or pictures of Doe.  The trial court had invited the jurors to submit written questions which might be posed to the witnesses.  In response to one such question, the detective stated that deleted items are not recoverable from the Apple iPhone, and he checked the desktop for deleted items and did not find child pornography.  He explained that he could not view some deleted photographs because deleted data mixes with other data in unallocated space and becomes unintelligible.  He testified that Apple released the iPhone 6 Plus in September 2014.
>
> Defendant submitted an expert declaration in support of his new trial motion attesting that files deleted from an iPhone 'may be recovered by examining . . . the Apple iTunes backup files on a local computer [and] the Apple iCloud backup,' and deleted photos may be partially or fully recovered depending on the data recovery software used.  In his opinion, defendant should have engaged a computer forensics expert to inspect his cell phone and desktop computer, and 'if there was ever a pornographic picture generated by [d]efendant, it is highly likely that some evidence would have been found on the desktop.'
>
> We find no deficient performance from trial counsel not calling an expert to reinforce a point that was not disputed.  Trial counsel's actions, including deciding whether a particular investigation is necessary, must be evaluated based on 'counsel's perspective at the time.'  The prosecution's witness testified there was no evidence of any photographs on defendant's computers.  Defendant argues that an expert could have established conclusively that he did not take a picture of Doe, but an expert could not have established that defendant never took a picture using a different phone or that he took a picture and deleted it before backing up.

*Id.* at *13 (citations omitted).

Finally, the Court of Appeal discussed trial counsel's decision to not call an expert in child suggestibility:

> Defendant argues that trial counsel was ineffective for failing to call an expert in child suggestibility to testify that Doe might have been influenced by her father to believe she had been molested.  'Jurors are generally considered to be equipped to judge witness

14

credibility without the need for expert testimony.' 'The general rule is that an expert may not give an opinion whether a witness is telling the truth, for the determination of credibility is not a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact; in other words, the jury generally is as well equipped as the expert to discern whether a witness is being truthful.' There is no authority in California addressing admissibility of expert evidence on child suggestibility, and out-of-state authority is mixed on admissibility.

Assuming expert testimony regarding child suggestibility was admissible, we find no deficient performance on this record. In support of the new trial motion, a clinical psychologist prepared a report in which she opined that Doe's disclosure and testimony may have been influenced by her father asking her on at least three occasions whether she had been touched by defendant (in 'her private area' and 'where she goes pee pee'), and by her parents' marital stresses. But the sexually explicit details described by Doe are not suggested by her father's questions, the conflict on the cruise, nor any marital strife. Defendant's expert acknowledged that 'a more thorough analysis' was needed in this case (she was actually retained as defendant's Stoll expert), and she 'would be prepared to testify to any conclusion from that analysis' should a new trial be granted. A recommendation that the matter be explored in the event of a new trial does not show incompetence for failing to engage a suggestibility expert, particularly since the defense was presented through other witnesses.

*Id.* at *13-14 (internal quotations, citations, and footnotes omitted).

**B.      Discussion**

Yu has not demonstrated that any of these decisions warrants habeas relief. "[S]trategic decisions -- including whether to hire an expert -- are entitled to a 'strong presumption' of reasonableness." *Dunn*, 141 S. Ct. at 2410 (quoting *Richter*, 562 U.S. at 104). "Defense lawyers have 'limited' time and resources, and so must choose from among 'countless' strategic options." *Id.* (quoting *Richter*, 562 U.S. at 106-07). The presumption of reasonableness extends towards trial counsel's selection of experts. Because there are "any number of hypothetical experts . . . whose insight might possibly have been useful. . . . Counsel [is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Richter*, 562 U.S. at 107.

With respect to the *Stoll* witness, Yu merely rehashes his arguments in state court, without any habeas-related analysis. Dkt. No. 16 at 28-29. Yu says that the Court of Appeal wrongly assumed that trial counsel made a tactical decision when counsel never investigated the possibility

United States District Court
Northern District of California

of calling a *Stoll* witness in the first place. Dkt. No. 16 at 29. Yu is mistaken. The Court of Appeal expressly acknowledged that "it didn't occur to [trial counsel] one way or the other to call a Stoll expert," and its reasoning underlying its decision did not presume trial counsel made a tactical decision. *Yu*, 2019 WL 1577745, at *12. Instead, the state court acknowledged the risks of calling a *Stoll* expert, including the possibility that "the jurors learn not all molesters are pedophiles, people who have happy relationships with their wives still commit the crime of molest." *Id.* The Court of Appeal's rejection of Yu's claim was not objectively unreasonable. *Reeves*, 141 S.Ct. at 2410.

For the deleted files, Yu says an expert might have opined that Doe "was not testifying truthfully when she allegedly heard petitioner take a photo of her naked backside as he molested her." Dkt. No. 16 at 32. The state court rejected Yu's argument, noting that at the time of trial, there was no dispute about the fact that no photographs had been recovered, and failure to call an expert to reinforce an undisputed point was not deficient. *Yu*, 2019 WL 1577745, at *13. Yu has not shown that this conclusion was not objectively unreasonable. Additionally, it seems unlikely that an expert could have opined that Doe's testimony was untruthful because Doe never conclusively alleged that Yu used his own cellphone to take a picture, instead saying that she heard a "click" sound "like a photo" during a molest. Dkt. No. 34 at 217. Yu has also failed to "affirmatively prove prejudice," which is also fatal to his claim. *Strickland*, 466 U.S. at 693.

For the child suggestibility expert, Yu did not show that the Court of Appeal's decision was objectively unreasonable. Yu says that such an expert might have established that Doe was parroting her father's manufactured allegations against Yu. Dkt. No. 16 at 31. But the state court determined that Doe's credibility was already an issue for consideration by the jury, and, in any case, the testimony might have been inadmissible under California state law. *Yu*, 2019 WL 1577745, at *14 (citing *People v. Kelly*, 17 Cal. 3d 24, 30 (1976)). The state court also noted that Doe's testimony included sexually explicit details that were unlikely to have been suggested by her father's questions. *Id.* Overall, Yu has "failed to establish how expert testimony would have raised a 'reasonable probability' that the outcome of the trial would have been different," because

"[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

## V.   FAILURE TO INVESTIGATE AND PRESENT EVIDENCE OF PETITIONER'S GOOD CHARACTER

Yu says that trial counsel was ineffective by failing to present evidence of Yu's lack of criminal history and his healthy relationship, including sex life, with his wife.  Dkt. No. 16 at 33.

### A.   Background

The Court of Appeal rejected these claims:

> Defendant argues that trial counsel was ineffective for failing to ask defendant's wife whether they had a normal sex life. Defendant introduced evidence through his wife, daughter, and niece that he was a family man engaged in healthy relationships. Defendant's wife testified that he was an honest man who would not lie, he was a good and gentle father who would joke with and never mistreat A., and he worked two jobs and took A. to her various activities.  They had been married 16 years and had known each other for over 20 years.  She knew him better than anyone in the world, and she did not did believe defendant touched Doe.  A. testified that she liked her father because he was funny.  The niece testified that defendant cooked meals for the family and taught her to drive.

*Yu*, 2019 WL 1577745, at *12.

> Defendant argues that trial counsel was ineffective for failing to obtain a ruling on whether his lack of a criminal history in the United States and China was admissible.  Jurors submitted several questions for defendant, including whether he had been convicted of any crime in the United States or China.  Responding to trial counsel's representation that defendant had no criminal convictions anywhere, the court noted in a sidebar conference that defendant's 'prior lawfulness might be a character area that [defendant] may wish to explore,' but the court itself would not explore it because decisions regarding whether and what type of character evidence to present were strategic and left to counsel.

> Trial counsel asked to recall defendant to ask the question posed by the juror; the prosecutor objected; and the court called a recess to 'talk about the type of character evidence that the defense may want to go into.'  Following the break, the court noted, outside the jury's presence, a discussion had ensued concerning 'the issues of character evidence and whether [trial counsel] wants to introduce any further evidence of his client's character.  And we talked about ways [counsel] may or may not explore that, especially in the area of [defendant's] conduct in China and all of that.'  Counsel then stated he did not wish to introduce further character evidence on

1  defendant's behalf.

2  *Id.* at *14-15.

3      **B.    Discussion**

4      Yu says that the Court of Appeal wrongly decided that trial counsel had a valid tactical

5  reason to not introduce the positive character evidence.  Dkt. No. 16 at 33-34.  This conclusion, he

6  argues, was objectively unreasonable because such evidence "could only have benefited his

7  defense."  *Id.* at 34.  But he made the same argument to the Court of Appeal, which determined it

8  would have been cumulative of already-introduced character evidence including "evidence

9  through his wife, daughter, and niece that he was a family man engaged in healthy relationships."

10  The state court determined trial counsel made a reasonable tactical choice to not introduce

11  evidence of Yu's sex life, because it "would have had minimal probative value in light of the

12  character evidence presented, and it did not relate to his conduct with children."  *Yu*, 2019 WL

13  1577745, at *14.  Yu has not shown that any of this was wrong for habeas purposes.  Additionally,

14  there was no prejudice to Yu.  Where cumulative evidence "may have been more direct . . . but . . .

15  no more reliable and would not have significantly changed the nature of the defense," its exclusion

16  is not prejudicial, and federal habeas relief will not be available.  *Staten v. Davis*, 962 F.3d 487,

17  498 (9th Cir. 2020).

18      With respect to his criminal history, the Court of Appeal determined that trial counsel's

19  decision to not introduce evidence regarding Yu's lack of criminal history was presumptively

20  tactical and also did not fall below the standard of reasonableness:

21          [T]he record shows that trial counsel elected not to introduce
             evidence regarding defendant's lack of criminal history, and
22          defendant has not overcome the presumption that his attorney's
             decision was tactical. No suggestion had been made that defendant
23          had been convicted of any crime, and counsel may have wanted to
             avoid cross-examination in that area.
24

25  *Yu*, 2019 WL 1577745, at *15.  The record indicates trial counsel considered introducing such

26  evidence and decided against it only after a conversation held outside of the presence of the jury,

27  *id.* at *14, which indicates that counsel's decision was a strategic choice entitled to the strong

28  presumption of reasonableness.

There is also no reason to believe the jury's verdict would have been different had it been presented with additional evidence regarding Yu's character. *Kipp*, 971 F.3d at 879-80 (no prejudice where the mitigating evidence that counsel allegedly failed to uncover was not "meaningfully different" from mitigating evidence actually presented). Even if "additional corroborating evidence may have strengthened" the case, which is not the case here, "the absence of such evidence" did not deprive the jury of relevant character evidence, because there was ample evidence in the record to support a finding that Yu had no criminal history and a healthy relationship with his wife. *Michaels v. Davis*, 51 F.4th 904, 960 (9th Cir. 2022).

## VI.   FAILURE TO PRESENT A COGENT CLOSING ARGUMENT

Yu claims that trial counsel's closing argument was "ineffective," "terse," and "unconvincing" because it failed to retread all of defense's arguments or attack all weaknesses in the prosecution's case. Dkt. No. 16 at 34-35.

### A.   Background

The Court of Appeal rejected this contention:

> Defendant argues that trial counsel was ineffective in closing argument 'by failing to provide a cogent theory of a defense,' and by 'utterly fail[ing] to corroborate the position of his own client which was that Doe's father had either persuaded her or convinced her to make a false report of being molested.' The record belies his contention.
>
> During closing argument, trial counsel addressed in detail 'the million dollar question' of why Doe would lie: 'It has everything to do with [Doe's] father. Everything to do with [Doe's] father. You saw him. Was he a little whacky? Yeah, I think he was. I don't know. But certainly he had anger toward my client. He had anger toward my client. He had an obsession of my client, if you go there. He talked about how gee, "I thought my wife was still texting him. I thought my wife -- I thought they were still exchanging texts when she's sitting next to me in my car because she won't show me the texts . . . .". . . [I]s he really rational? I don't know the answer to that, but I would not put it past him to come up with a scheme to say well, I got to get this guy out of my life. He's a threat to my family, he's a threat to me and my wife and I got to get him out. Is it possible that he started talking to [Doe] and planted the seeds of a false memory in her head? I think that's possible. I think it's certainly possible in this particular case. Think about it. He was the closest to [Doe]. You heard [Doe's mother], he has a close relationship with [Doe]. He spent the most time with [Doe], because he was the one that would take her and pick her up from her activities on the weekends. And more curious

United States District Court
Northern District of California

is his conduct.  He says -- this is the guy that would randomly ask his child, "Well, did anything happen to you today after you visited your friends?" showing a lot of concern.  He said that was his first child and he would protect her.  But as soon as she says something to him that would set that off, what does he do?  He doesn't do anything.  He doesn't call the cops, doesn't tell his wife.  More importantly, doesn't go and confront [defendant].  "What the hell are you doing?  Did you do this?  What the hell are you doing?"  He doesn't do that.  Why?  Why?  That just dumbfounds me.  I don't understand why someone wouldn't do that.  Either because number one, he's afraid he's going to get in trouble.  Why would he be afraid of getting in trouble?  Because maybe he's planting these ideas in [Doe's] head.  Maybe he's talking to her, talking about stuff, planting things in her head.  That's as plausible an explanation as anything.  Because it doesn't -- he says the first time he heard it, "I'm pissed," but he doesn't do anything.  Second time he's more pissed.  He still doesn't do anything, and third time he says "I don't remember."  It would seem to me if someone reported that to me, I'd be asking the kid, I'd be talking to somebody.  I'd be doing something to get down to the bottom of this.  I don't think he did anything.  I think all he did was talk to [Doe], continue to talk to her, maybe plant those memories in her head; talking about it, getting her to talk about it and at some point told her to go tell the teacher.  I think that is equally an explanation for his conduct.  He had motive.  He was mad at my client.  He was angry.  He thought my client was having some interest in his wife.  He also had opportunity because he spent time with [Doe].

*Yu*, 2019 WL 1577745, at *15 (internal citations omitted).

The state court rejected Yu's claim of ineffective assistance, finding that Yu had not shown that his counsel's closing argument was deficient:

Defendant complains that trial counsel should have argued the odd circumstances of Doe's disclosure, and the motive she may have had for making a false allegation.  But '[t]he mere circumstance that a different, or better, argument could have been made is not a sufficient basis for finding deficient performance by defense counsel.'  Trial counsel raised a vigorous defense, arguing that the molestations could not have happened in the spring because a tenant lived in the converted garage and defendant did not have a key to the room, and because defendant's wife would be home after work by the time Doe would visit after art class.  He argued that molestations could not have happened in the fall because Doe was never out of A.'s sight and A.'s cousin spent her weekends studying in the converted garage.  He argued that Doe's father was close to her, and had the opportunity to influence her.  His arguments are consistent with the evidence in the case and reflect legitimate defense strategy.  'The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'

*Yu,* 2019 WL 1577745, at *15-16 (internal citations omitted).

United States District Court
Northern District of California

### B.      Discussion

"The right to effective assistance extends to closing arguments." *Gentry*, 540 U.S. at 5. Because "counsel has wide latitude in deciding how best to represent a client" judicial review of a defense attorney's summation is "therefore highly deferential -- and doubly deferential when it is conducted through the lens of federal habeas." *Id.* at 6.  When counsel "focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Id.* at 8.

The Court of Appeal's determination that the closing argument was "vigorous," "consistent with the evidence in the case," and "reflect[e]d legitimate defense strategy," was not objectively unreasonable.  *Yu* at *16.  Trial counsel's closing argument presented evidence of Yu's good character and background and attacked potential weaknesses in the prosecution's case.  Yu's assertions that counsel failed to make key arguments and his concerns with the overall style of closing argument are unavailing.  These concerns reflect differences in defense strategy.  They are not grounds for the extraordinary remedy of federal habeas relief.

## VII.   CUMULATIVE ERROR

As a closing catchall, Yu has not identified a single error of constitutional magnitude. Consequently, his claim of cumulative error must be rejected, as "there can be no accumulation of prejudice amounting to a denial of due process or meeting the *Strickland* standard." *Lopez*, 47 F.4th at 1053; *see also Demetrulias v. Davis*, 14 F.4th 898, 916 (9th Cir. 2021); *Chandra*, No. 16-CV-06076-JD, 2022 WL 6144269, at *20 (N.D. Cal. Oct. 7, 2022).

## CONCLUSION

The petition is denied.  A certificate of appealability is also denied.  The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Cases, Rule 11(a).  A judge many grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to

satisfy § 2254(c) is straightforward: [t]he petition must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Yu has not shown a certificate is warranted on the record before the Court.

     **IT IS SO ORDERED.**

Dated:  January 26, 2024

_____
JAMES DONATO
United States District Judge